## IN THE MATTER OF THE ESTATE OF BONIFACIO LATALLADI, DECEASED

Probate No. 8/1983

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

April 7, 1988

FREDERICK G. WATTS, ESQ., St. Thomas, V.I., *for the Estate*

IVER A. STRIDIRON, ESQ., St. Thomas, V.I., *for Lillian Lanclos, Judgment Creditor*

CHRISTIAN, *Senior Sitting Judge*

### MEMORANDUM OPINION AND ORDER

The purpose of this document is to bring into focus the unduly

long period of time this probate proceeding has been pending;[1] the present status of the proceeding; and the steps which must be taken to close it in the shortest possible time. Given explicit and direct treatment will be a brief history of the case; the net worth of the estate including the appraised value of the assets left by decedent, the liabilities of the estate, including approved claims against the estate, both paid and unpaid; the amount of inheritance tax due from the estate, the fact that the Court treats the inheritance tax as a claim against the beneficiaries thereof, and the assets of the estate, and why; how the Court will proceed to have the unpaid claims, including the inheritance tax due from the estate, paid by the personal representative; and, finally, the additional steps which must be taken to close the proceeding.

## I. BRIEF HISTORY

This proceeding was commenced as far back as February 9, 1972, in the District Court of the Virgin Islands. By Order of that Court dated November 8, 1982, it was transferred to the Territorial Court of the Virgin Islands.[2] At the time of the transfer, the administration had been moved as far as the completion of the publication of notice of the date and time of the hearing of any objections to the Final Account.

## II. NET WORTH OF THE ESTATE

The Final Account showed appraised assets left by decendent[3] in the amount of $110,254.93.[4] The only debt left by the decedent, according to Paragraph 4 of the Petition for Administration, is $600.00 owed to the Government of the Virgin Islands. But during the administration, and by the time of the filing of the Final

---

[1] Normally, a proceeding of this nature should be closed within 12 to 18 months at most after the initial Petition mandated in 5 V.I.C., App. IV, Rule 191(c) is filed. This case was filed on February 9, 1972, in the District Court of the Virgin Islands.

[2] By legislation enacted on September 6, 1976, which became effective January 1, 1977, the Municipal Court of the Virgin Islands was renamed the Territorial Court of the Virgin Islands and, inter alia, given concurrent jurisdiction with the District Court of the Virgin Islands "to supervise and administer estates and fiduciary relations." See 4 V.I.C. § 76(a) (1987 Cumulative Pocket Supplement).

[3] By two Court-appointed appraisers whose return is dated March 15, 1973.

[4] The Final Account lists on Page two thereof debts owed to decedent of $100.00 by Wilfred Benjamin, $50.00 by Joseph Danet, each secured by a Series E U.S. Savings Bond, and numerous other small debts which are probably uncollectible due to the passage of time.

Account, and shown thereon as paid, were the following claims against the estate:

1. Government of V.I. for potable water bill    $ 1,544.50
2. Funeral   —St. Thomas    275.00
          —San Juan    1,470.00
3. Hospital—San Juan    744.05
4. Dr. Suarez    225.00
5. Dr. Noya Benitez    45.00
          $ 4,303.55

As of this date, the following additional approved claims against the estate are not paid:

1. V.I. Government bill dated May 8, 1973, for excise tax    $ 2,398.72
2. V.I. Government bill dated July 20, 1977, for balance of potable water bill    2,803.00
3. Inheritance tax due    1,937.00[5, 7]
4. Judgment lien amounting to inheritance amount due Bonifacio Latalladi, Jr., representing 1/6 of the net estate $97,650.01, $16,275.00, less $321.50 inheritance tax    15,953.50[6, 7]
5. Expenses of administration as per Statement for Inheritance Tax prepared by Loud & Campbell    3,099.65
          $ 26,191.87

---

[5] The amount of the tax was erroneously computed to be $6,712.95. This is probably because the tax was computed at the rate in existence for the tax period immediately prior to the time of computation, 1975, when the rate was 5% with a $200.00 exemption for each lineal heir, descendant or ascendant, or spouse, which period ran from October 30, 1973, to December 3, 1974, instead of 2% on the net balance of the estate subject to distribution, with the same exemption, which obtained prior to October 30, 1973; or at the rate in effect during the inheritance tax period immediately following (December 4, 1974, to March 14, 1984), 5% for the same distributees, now defined as Class I Inheritors, with a $50,000.00 exemption, in solidum, for the entire class. The decedent died on January 25, 1972. The correct amount of inheritance tax due from his estate is $1,937.00, not $6,712.95.

[6] This amount must be paid to Lillian Lanclos, parent and guardian of Stephen Smith in satisfaction of Judgment Lien held by him as recorded against the realty assets of the estate. This of course is minus any payments he may have received prior to this date from the estate for discharge of the lien.

[7] Neither the $1,937.00 for inheritance tax due nor the $15,953.50 to discharge the Judgment Lien is included on the Statement for Inheritance Tax Purposes as these are not typical expenses of administration for which tax credit should be claimed and granted.

If we do not factor in the $1,937.00 due for inheritance taxes and the $15,953.50 inheritance due to Bonifacio Latalladi, Jr., in the liabilities to the payment of which the assets of the estate are subject, we end up with an estate net worth of $97,650.01, on which base the correct inheritance tax has been computed, and the unpaid liabilities come to only $8,301.37 as shown on the amended, updated Statement for Inheritance Tax Purposes. But since we must pay these two sums to completely close the administration, the balance of the funds needed for this purpose is $26,191.87. The foregoing demonstrates that the net worth of the estate as of this date is $97,650.01, if the aforesaid two sums are not figured in the computation; or $82,364.43, if they are. In any event, we are in need of $8,301.31 (usual expenses of administration); $1,937.00 (amount of inheritance taxes payable by the estate); and $15,953.50 (amount necessary to retire the Judgment Lien on the real assets of the estate), a total of $26,191.87, to close the administration.

## III. PROVISIONS FOR PAYMENT OF THE INHERITANCE TAXES, UNPAID EXPENSES OF ADMINISTRATION, ETC.

■ It is the duty of the personal representative to pay all the claims against the estate and the expenses of administration of the estate from the available assets of the estate, first from the personal assets, and where these are insufficient, from so much of the realty as is necessary. 15 V.I.C. § 492(d) et seq.

■ The claims against the estate referred to here are doubtless the debts created by the decedent and not the inheritance taxes. The tax is an obligation, the ultimate burden or incidence of which falls upon the recipients of the property, or upon the property transferred to the recipients or beneficiaries of the net worth of the estate. 42 Am. Jur. 2d, Sections 4 and 342. We therefore hold that where, as here, the heirs fail to pay the inheritance tax, it is the right and duty of the personal representative, and where the personal representative fails to discharge this obligation of his trust, it is the duty of the Court, acting sua sponte, where there is no cash or other personal property to be used for the purpose, to take such action as is appropriate to have the tax paid by invoking the aforesaid applicable provisions of the Probate Code.

■ The same holds true for any approved claims against the estate and expenses of administration of the estate not paid by the

personal representative because of insufficiency of cash or other personal property belonging to the estate for the purpose.

The Administratrix will accordingly be directed to sell so much of the realty as is necessary to pay the tax and the other unpaid obligations which must be paid to close the estate. It may well be that since the tax has now been reduced to about one-fourth of what it was first computed to be, $1,937.00 instead of $6,712.00, that the parties may be able to avert resorting to the more extreme and onerous course necessary to discharge this obligation of the heirs who inherit the realty, i.e., the widow and four children of the decedent.

## IV. ON DISCHARGING THE JUDGMENT LIEN INCUMBERING THE REALTY OF THE ESTATE

Since the judgment lien incumbers all the realty of the estate, although it is the obligation of only one of the heirs at law, Bonifacio Latalladi, Jr., the heirs would be well advised to take action to immediately pay over to the judgment creditor the unpaid amount of the value of the share of the realty inherited by that heir. In case of a sale, the purchaser would bid on only the value of the property over and above the amount of the judgment lien and other creditors' equities, if in fact there is such an excess, e.g., the owners' equity in the realty.

It therefore behooves all the heirs, whether there is a sale of the property or not, to deal with that issue, have it resolved finally, and placed behind them—promptly.

## V. CONCLUSION

This administration is now sixteen years old. Therefore, its closing is long overdue. The main reason for the inordinate period it has taken is the insufficiency of cash and other personal assets to pay all the claims against the estate, all the expenses of administration of the estate, the inheritance taxes due from the estate, and to satisfy and discharge the judgment lien attached to the realty of the estate to secure the payment of a judgment debt of one of the distributees of the estate to the extent of the inheritance due from the estate to such distributee.

When this situation exists in probate administration, and realty does exist as the only available asset of the estate, the law clearly provides a solution to be utilized by the personal represent-

ative—the sale of so much of the realty as is necessary to satisfy the outstanding obligations of the estate.

If the personal representative fails or refuses to discharge this obligation of his trust, it is the duty of the Court to invoke the applicable provisions of the Code to provide a remedy. See 15 V.I.C. subsections 240(b) and (c).

LET ORDER ENTER ACCORDINGLY.

## ORDER

The Court having made its Memorandum Opinion in above-titled matter on even date herewith; and the Court being fully advised and satisfied in the premises, it is hereby

ORDERED:

1. That the net worth of the estate as per amended, updated Statement for Inheritance Tax Purposes filed on even date herewith is $97,650.01;

2. That the inheritance tax due the Government is $1,937.00, not $6,712.95, as originally computed;

3. That the inheritors of the net estate, and the assets of the estate, are ultimately responsible to pay the approved claims against the estate, the expenses of administration of the estate, and the inheritance taxes due on their respective inheritances;

4. That since the sum of $26,191.87 is necessary to pay outstanding claims against the estate, expenses of administration of the estate, the inheritance tax due from the estate, and the amount necessary to discharge the judgment lien recorded against the realty of the estate, and the only asset left in the estate is the realty left by the decedent, the personal representative, Carmen R. George, is hereby granted thirty (30) days from the date hereof to commence action to sell so much of the realty of the estate, pursuant to 15 V.I.C. Chapter 25, as is necessary to pay the aforesaid obligations of the estate; or to appear before this Court on Tuesday, May 17, 1988, at 10:00 a.m., to show cause why she should not be removed for failure to discharge this duty of her trust according to law.